UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CORY O'DELL DERRICK,

      Plaintiff,                       Case No. 3:19-cv-13105
                                         District Judge Robert H. Cleland
v.                                    Magistrate Judge Kimberly G. Altman

CORRECT CARE SOLUTIONS, JILL
WARNER, and TAMARA SMITH,

      Defendants.

_____/

## REPORT AND RECOMMENDATION ON CROSS-MOTIONS FOR SUMMARY JUDGMENT (ECF Nos. 28, 42)

### I.  Introduction

This is a civil rights case under 42 U.S.C. § 1983.  On October 23, 2019, plaintiff Cory O'Dell Derrick, proceeding *pro se* and *in forma pauperis* filed a complaint alleging that defendants, Correct Care Solutions (CCS), Tamara Smith, and Jill Warner,[1] violated his constitutional rights while he was a pretrial detainee at the Isabella County Correctional Facility.  (ECF No. 1).  Under 28 U.S.C. § 636(b)(1), all pretrial matters were referred to the undersigned.  (ECF No. 41). Derrick and the remaining defendants have each filed motions for summary

_____

[1] Defendants Isabella County Correctional Facility and Scott Welsh were previously dismissed. (ECF No. 6).

1

judgment, which are fully briefed.  (ECF Nos. 28, 42).  As will be explained,
Derrick did not exhaust his administrative remedies with respect to the claims in
this case and, exhaustion aside, his claims fail on the merits.  Accordingly, for the
reasons that follow, the undersigned recommends that defendants' motion for
summary judgment be **GRANTED**, and that Derrick's motion for summary
judgment be **DENIED**.

## II.  Background[2]

Derrick initially alleged that defendants failed to provide competent health
care for his chronic illnesses and other medical needs from June to October of
2019. (ECF No. 1).  He claimed that defendants neglected to clean his CPAP
(continuous positive airway pressure) machine, refused to provide an ultrasound or
blood work to prevent his DVT (deep vein thrombosis, a medical issue involving
blood clots) from reoccurring, failed to treat his poor circulation and nerve damage
issues, and failed to treat injuries to his left eye and right foot resulting from an

---

[2] A review of the Court's electronic filing system appears to indicate that Derrick
has filed eight other federal lawsuits in this jurisdiction either relating to the
conditions of his confinement or challenging his criminal proceedings.  *See
Derrick v. Isabella County Trial Court, et al.,* 19-13123; *Derrick v. Clare County,
et al.,* 19-13689; *Derrick v. Advanced Correctional Healthcare, Inc., et al.,* 20-
11328; *Derrick v. Midland County, et al.,* 20-12260; *Derrick v. M.I.N.T., et al.,* 19-
13109; *Derrick v. Isabella County Trial Court, et al.,* 19-13206; *Derrick v. Rice, et
al.,* 20-11378, and *Scouten v. Midland County Jail, et al.,* 20-11708. In *Scouten,*
Derrick is part of a group of prisoners who sued challenging conditions at the
Midland County Jail.  All but *Scouten* have been dismissed.

assault at the hands of another inmate.  (*Id*.).  He further claimed that his

"restrictive confinement" and "segregation" were without evidentiary justification,

and that elements of his confinement constituted Eighth Amendment violations.

(*Id*.).  In December 2019, Derrick supplemented his complaint, adding that his

CPAP machine was broken by a correctional officer, and that because Derrick

would not sign a release form, CCS refused to repair or replace it, causing him a

litany of health problems.  (ECF No. 14).

According to the medical records submitted by defendants, Derrick was

booked at the Isabella County Jail on May 29, 2019.  On June 22, 2019, he spoke

to Defendant Tamara Smith, LPN, complaining of a blood clot in his lower leg that

had cut off his circulation and requesting blood work.  (ECF No. 29, PageID.242-

245).  Derrick also noted an issue in his genital area.  (*Id*., PageID.245).  Nurse

Smith informed him that she could obtain a urine sample and see a doctor on

Tuesday to discuss his medical issues.  (*Id*.).  Nurse Smith noted that Derrick had

no signs of distress or swelling and had been seen on video walking around his cell

with no issues.  (*Id*.).

The next day, Derrick submitted a request for an ultrasound and blood draw,

claiming not to have varicose veins and complaining of neuropathy from a gunshot

wound.  (ECF No. 29, PageID.246).  Nurse Smith saw him later that day, noting

his complaints and requests, and that he did in fact appear to have varicose veins.

3

(*Id*., PageID.247).  She found no area of swelling, redness, warmth, or pain to the touch.  (*Id*.).  Two days later, June 24, 2019, Derrick submitted another medical request regarding DVT, blood clots, the need for an ultrasound, and complaining of no treatment.  (*Id*., PageID.249).  He also requested that his CPAP machine be cleaned and sterilized.  (*Id*.).  He was seen the following day by Defendant Jill Warner, RN, who informed Derrick that his labs did not indicate a blood clot and advised him to hydrate and "be up and moving around" for his health.  (*Id*., PageID.250-251; ECF No. 28-3, PageID.220-222).  Nurse Warner noted Derrick's complaint of a face rash due to his CPAP mask, but did not see any redness, scaling, or excoriated areas on his face.  (*Id*.).  She advised Derrick that cleaning his CPAP machine with alcohol would harm the machine and that it should be cleaned with soap and water and hung to dry.  (*Id*.).

The next day, June 27, 2019, Derrick submitted a request for an extra blanket, shoes, a CPAP cleaning, and for various physical ailments.  (ECF No. 29, PageID.252).  He submitted another request the next day with some of the same concerns and adding that there were bugs in his cell.  (*Id*., PageID.253).  Nurse Smith responded that he would be seen by the doctor on the following Tuesday morning, July 2, 2019, which he was.  (*Id*., PageID.253-254; ECF No. 28-2, PageID.217).  Derrick complained of DVT, neuropathy, and a "stroke feeling," and the doctor allowed Derrick to wear his requested shoes, ordered his requested extra

blanket, and ordered Derrick's medical records from the University of Michigan and Covenant Healthcare.  (ECF No. 28-3, PageID.222; ECF No. 29, PageID.254).

A month later, August 3, 2019, Derrick submitted a medical request regarding blood clots, nerve damage, loss of feeling in his toes, and pain.  He requested a support sock, shoes, a cane, and an ultrasound to make sure the blood clot had not grown.  (ECF No. 29, PageID.255).  He also wrote a letter to Nurse Warner regarding his nerve pain and recurring DVTs and requesting compression socks and topical cream for his pain and made a second medical request for topical cream to treat his pain.  (*Id.*, PageID.256-257).  Nurse Warner responded the same day that the doctor had denied the topical cream request, and that Derrick had a set of TED hose for his feet.  (*Id.*, PageID.258; ECF No. 28-3, PageID.223).

On August 26, 2019, Derrick was involved in a fight with another inmate. He was punched during the fight, and afterwards complained that his foot was hurt but refused ice and medical attention.  (ECF No. 28-4).  The following day, Derrick submitted a medical request complaining of blurry vision in his left eye and noted his right foot was "swollen broken."  (ECF No. 29, PageID.259).  Nurse Warner saw Derrick two days later, August 29, 2019, noting that the toes of his right foot were bruised, his foot was warm to the touch with positive pulse and minimal swelling, and that his eye was bruised but not swollen.  (ECF No. 28-3, PageID.223).  She followed up with the doctor, who ordered x-rays for Derrick's

5

right foot and left eye. (*Id*.). Both came back negative. (ECF No. 29, PageID.261-262). The next day, Derrick saw Nurse Smith with complaints of pain in various areas and a "swishing sound in his ears"; she noted that he did not have a limp, was in no distress, and had full range of motion. (ECF No. 28-2, PageID.217-218; ECF No. 29, PageID.263-264). She told Derrick he could take Tylenol for pain, which he had in his cell, and the following day Derrick reported feeling much better with no pain. (*Id*.). This was Nurse Smith's final interaction with Derrick.

Derrick submitted medical requests on the 4th and 10th of September 2019, requesting that his right leg, head, and heels be examined. (ECF No. 29, PageID.265-266). He was seen by the doctor and Nurse Warner on the date of his second request, who ordered a second set of x-rays for Derrick's head and right foot. (*Id*., PageID.267). The foot x-ray showed a metatarsal fracture with minimal displacement, mild callus formation, and associated soft tissue swelling. (*Id*., PageID.268). The x-ray of facial bones had unremarkable results with no fractures shown. (*Id*.). A medical shoe was ordered for Derrick, but he complained that it hurt his foot more and had no ankle support or balance. Nurse Warner responded with instructions from the doctor that Derrick was to decrease his activity to allow his toe to heal, and that the more he stands and walks, the more swelling and pain there will be. (*Id*., PageID.270; ECF No. 28-3, PageID.224).

6

On October 1, 2019, Derrick submitted a complaint that his foot was not healing properly, and on October 7, 2019, he submitted another complaint of "major" nerve damage on his right side and pain in his left eye. (ECF No. 29, PageID.271-272). Derrick saw the doctor the following day, who arranged for a third x-ray of Derrick's right foot and an ophthalmology consultation. The x-ray showed no acute fracture, mild degenerative changes of the toes and mid foot, and a small plantar heel spur. The radiologist noted to consider a CT as clinically warranted. (*Id.*, PageID.273-274; ECF No. 28-3, PageID.224-225). Derrick saw an ophthalmologist on October 15, 2019, who found no suggestion of posterior vitreous detachment. Glaucoma was suspected, Derrick's intraocular pressure was satisfactory, and an OCT was normal and showed a good signal for each eye. (ECF No. 29, PageID.275-278).

Derrick had no further medical complaints until December 18, 2019, when his CPAP machine appeared to have been damaged when it was removed from his cell and later returned to him. Derrick noted that upon its return, the machine made a strange noise and had a "burnt" smell; the machine was examined and found to be "dead." It could not be reset because it was too old. (ECF No. 28-5). The following day, Nurse Warner was informed about the CPAP machine and that a prescription from the doctor who ordered the machine would be needed to replace it. (ECF No. 28-3, PageID.225). Derrick reportedly refused to sign the

release of information form required to obtain this information and did not

remember the identity of the doctor who had originally prescribed the machine.

(*Id.*; ECF No. 28-5, PageID.230).  This was Nurse Warner's last interaction with

Derrick.    (ECF No. 28-3, PageID.226; ECF No. 28-5, PageID.231).  Derrick was

released from custody in early January of 2020.

### III.  Summary Judgment Standard

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary

judgment if the movant shows that there is no genuine dispute as to any material

fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

56(a). A fact is material if it might affect the outcome of the case under governing

law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court "views

the evidence, all facts, and any inferences that may be drawn from the facts in the

light most favorable to the nonmoving party." *Pure Tech Sys., Inc. v. Mt. Hawley

Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004).

"The moving party has the initial burden of proving that no genuine issue of

material fact exists...." *Stansberry v. Air Wis. Airlines Corp.*, 651 F.3d 482, 486

(6th Cir. 2011) (internal quotations omitted); cf. Fed. R. Civ. P. 56(e)(2) (providing

that if a party "fails to properly address another party's assertion of fact," the court

may "consider the fact undisputed for purposes of the motion"). "Once the moving

party satisfies its burden, 'the burden shifts to the nonmoving party to set forth

specific facts showing a triable issue.' " *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The nonmoving party "must make an affirmative showing with proper evidence in order to defeat the motion." *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009); *see also Lee v. Metro. Gov't of Nashville & Davidson Cty.*, 432 F. App'x 435, 441 (6th Cir. 2011) ("The nonmovant must ... do more than simply show that there is some metaphysical doubt as to the material facts[.] ... [T]here must be evidence upon which a reasonable jury could return a verdict in favor of the non-moving party to create a genuine dispute.") (internal quotation marks and citations omitted). "Such evidence submitted in opposition to a motion for summary judgment must be admissible." *Alexander*, 576 F.3d at 558 (internal quotation marks and citations omitted). In other words, summary judgment is appropriate when the motion "is properly made and supported and the nonmoving party fails to respond with a showing sufficient to establish an essential element of its case[.] ..." *Stansberry*, 651 F.3d at 486 (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

The fact that Derrick is *pro se* does not reduce his obligations under Rule 56. Rather, "liberal treatment of pro se pleadings does not require lenient treatment of substantive law." *Durante v. Fairlane Town Ctr.*, 201 F. App'x 338, 344 (6th Cir.

2006). In addition, "[o]nce a case has progressed to the summary judgment stage,

... 'the liberal pleading standards under *Swierkiewicz v. Sorema, N.A.*, 534 U.S.

506, 512-13 (2002)] and [the Federal Rules] are inapplicable.' " *Tucker v. Union of*

*Needletrades, Indus., & Textile Employees*, 407 F.3d 784, 788 (6th Cir. 2005)

(*quoting Gilmour v. Gates, McDonald & Co*., 382 F.3d 1312, 1315 (11th Cir.

2004)). The Sixth Circuit has made clear that, when opposing summary judgment,

a party cannot rely on allegations or denials in unsworn filings and that a party's

"status as a pro se litigant does not alter [this] duty on a summary judgment

motion." *Viergutz v. Lucent Techs., Inc.*, 375 F. App'x 482, 485 (6th Cir. 2010);

*see also United States v. Brown*, 7 F. App'x 353, 354 (6th Cir. 2001) (affirming

grant of summary judgment against a pro se plaintiff because he "failed to present

any evidence to defeat the government's motion").

## IV.  Parties' Arguments

Defendants argue that Derrick cannot satisfy the objective or subjective

components of showing that either Nurse Smith or Nurse Warner were deliberately

indifferent to a serious medical need.  *Wilson v. Seiter*, 501 U.S. 294, 297 (1991);

*Estelle v. Gamble*, 429 U.S. 97 (1976).  They also argue that Derrick has failed to

allege with specificity a constitutional violation by CCS as required under *Monell*

*v. Department of Social Services*, 436 U.S. 658 (1978).  Finally, defendants argue

10

that Derrick has failed to exhaust all administrative remedies before bringing suit, as required by 42 U.S.C. § 1997e(a).

Derrick responds that he has not been provided the documentation he has sought to argue his case, and that records of daily cleaning of his CPAP machine cannot be provided because his machine was not cleaned by staff regularly.  He also moves separately for summary judgment, maintaining that his CPAP machine was not cleaned or sterilized; that his neuropathy was not properly treated by a neurologist or orthopedic doctor; that his requests for an MRI, CAT scan, and ultrasound went unanswered; and that he has been left "with irreparable damages and crippled for the rest of [his] life."  Defendants argue that Derrick's motion for summary judgment was filed months after the deadline for dispositive motions and ask that the motion not be considered.

## IV.  Analysis

As an initial matter, defendants are correct that Derrick's motion for summary judgment was filed past the dispositive motion deadline.  Nevertheless, the undersigned has considered plaintiff's motion, particularly because the arguments therein can be viewed as a response to defendants' motion, and also in the interest of justice.

### A.  Exhaustion

11

Although defendants' exhaustion argument is presented as the final argument in their brief, exhaustion is a threshold issue which the Court shall consider first.

### 1.  General

The Prison Litigation Reform Act (PLRA) requires prisoners to "properly" exhaust all "available" administrative remedies prior to filing a lawsuit challenging prison conditions.  42 U.S.C. § 1997e(a); *Woodford v. Ngo*, 548 U.S. 81, 88-90, 93 (2006).  Proper exhaustion of administrative remedies "means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)."  *Woodford*, 548 U.S. at 90, 93 (emphasis in original). Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court and produces a useful administrative record.  *Jones v. Bock*, 549 U.S. 199, 204 (2007). The PLRA does not detail what "proper exhaustion" entails because "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion."  *Jones*, 549 U.S. at 218.

"[A]n inmate is required to exhaust those, but only those, grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.' "  *Ross v. Blake*, ⸺ U.S. ⸺, 136 S. Ct. 1850, 1859, 195 L.Ed.2d 117 (2016) (quoting *Booth v. Churner*, 532 U.S. 731, 738 (2001)).  "The Supreme

Court has identified three circumstances in which an administrative process is rendered 'unavailable': first, when prison 'officers [are] unable or consistently unwilling to provide any relief'; second, when a process is 'so opaque' that it is 'incapable of use'; or third, when prison officers 'thwart inmates from taking advantage of a grievance process.' " *Ratliff v. Graves*, 761 F. App'x 565, 567 (6th Cir. 2019) (quoting *Ross*, 136 S. Ct. at 1859-60).

Defendants have provided a document outlining the grievance procedure for the Isabella Correctional Facility. *See* ECF No. 28-7. That document states that an inmate should first attempt to resolve any issue informally with a corrections officer, and then with a sergeant or a corrections officer that is in charge on that shift. If the inmate feels that their complaint has not been resolved, they may then file an inmate grievance form, which must be filed within seven days of the event. (ECF No. 28-7).

### 2. Application

Defendants have attached Derrick's grievance record to their motion. Notably, while Derrick made several grievances while in custody, none of them relate to the medical complaints in this case. The closest Derrick comes is a grievance that an officer Sackett, who is not a defendant, removed his CPAP machine from his cell and broke it. *See* ECF No. 28-8, PageID.241. Significantly,

Derrick admits in his complaint that he did not grieve the issues before filing suit. *See* ECF No. 1, PageID.10.

The Sixth Circuit has "clearly held that an inmate does not exhaust available administrative remedies when the inmate fails entirely to invoke the grievance procedure." *Napier v. Laurel County, Ky*., 636 F.3d 218, 224 (6th Cir. 2011). Here, Derrick did not invoke the grievance procedure at all regarding the claims in his complaint and he admits the same. Under these circumstances, defendants are entitled to summary judgment on the grounds that Derrick failed to exhaust his administrative remedies.

However, because Derrick is no longer in custody, he arguably cannot invoke the grievance procedure to exhaust his claims. Moreover, defendants have addressed the substance of Derrick's claims. And Derrick has moved for summary judgment on his claims. Under these circumstances, and in the interests of completeness, the undersigned will consider the remaining arguments.

### B.  Eighth Amendment Claim

#### 1.  General

Under the Eighth Amendment, "prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.' " *Farmer v. Brennan*,

511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)).

The Supreme Court has set forth two requirements to show a violation of the Eighth Amendment—one objective and one subjective.  "First, the deprivation alleged must be, objectively, 'sufficiently serious,' . . . a prison official's act or omission must result in the denial of 'the minimal civilized measure of life's necessities[.]' " *Farmer*, 511 U.S. at 834 (citations omitted).  "[A] medical need is objectively serious if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Richmond v. Huq*, 885 F.3d 928, 938 (6th Cir. 2018) (quotation marks and citations omitted).

Second, "a prison official must have a sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834.

> The subjective component requires a showing that the official kn[ew] of and disregard[ed] an excessive risk to inmate health or safety.  [T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.  An express intent to inflict unnecessary pain is not required.  Rather, obduracy and wantonness are required to make a showing of deliberate indifference.  [A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

*Richmond*, 885 F.3d at 939 (internal quotation marks and citations omitted).

"[D]eliberate indifference [lays] somewhere between the poles of negligence at one

end and purpose or knowledge at the other[.]" *Farmer*, 511 U.S. at 836. "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id*.

## 2. Application

Derrick is unable to satisfy the objective or subjective requirements of showing a deliberate indifference to a serious medical need by either Nurse Warner or Nurse Smith. Regarding Derrick's objective medical needs, he has failed to show that they went untreated during his time in custody. To the contrary, he was seen by the defendant nurses as well as a doctor in response to all of his complaints made in his numerous medical request kites. On a few occasions, Derrick filed a second request before being seen, but he has not shown that any delay in the responses to his requests caused him harm. This does not constitute deliberate indifference. *Napier v. Madison Cty., Ky.*, 238 F.3d 739, 742 (6th Cir. 2001) ("[A]n inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment to succeed." (quotation omitted)). As summarized above, he was provided with compression hose, a medical shoe, Tylenol for pain, an extra blanket for warmth and elevation when requested, and was x-rayed for foot and facial injuries numerous times,

16

which showed mostly negative results.  Some of Derrick's medical requests were denied, including requests for topical cream, CPAP cleanings, and treatments for conditions he believed he had.  But where an inmate has received ongoing treatment and claims that this treatment was inadequate, the objective component of the claim requires a showing of care "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *See Miller v. Calhoun Cty.*, 408 F.3d 803, 819 (6th Cir. 2005) (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989)).  Such a showing has not been made, and as the defendants note, Derrick must "put up" supporting evidence or "shut up" regarding his claim.  *Street v. JC Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1989); *Cox v. Kentucky Dept. of Transportation*, 53 F.3d 146, 149 (6th Cir. 1995).  Derrick has not supported his claim with evidence sufficient to survive the objective component of the deliberate indifference test, nor is he entitled to summary judgment on this ground.

Because Derrick has not satisfied the objective requirements of his deliberate indifference claim, the Court need not address the subjective component.  *Wayne v. Heyns*, No. 13-14495, 2015 WL 736329, at *7 (E.D. Mich. Feb. 20, 2015).  However, Derrick has not established the subjective component.  As noted above, the named defendants were responsive to Derrick's requests, while simultaneously noting that he did not appear to be in distress and was often standing and walking

17

around his cell.  And it is apparent from the record and unopposed by evidence or allegation from Derrick that any denials of his medical requests came not from either defendant nurse but from his treating doctor.  Furthermore, Nurse Smith's last interaction with Derrick was in August 2019 when he reported being in no pain and feeling much better than the day prior in which she had seen him.  Nurse Warner's last interaction with Derrick until his CPAP machine broke was in October 2019; the record reflects no medical requests or complaints made by Derrick between then and in December when his CPAP machine ceased functioning.  Thus, there is no evidence from which a reasonable juror could conclude that either nurse knew or recklessly disregarded the risk of a serious medical need.  Nurse Smith and Nurse Warner are therefore entitled to summary judgment on Derrick's Eighth Amendment claim.

### C. *Monell* Claim

#### 1. General

"Under § 1983, there is no *respondeat superior* or vicarious liability." *Flagg v. City of Detroit*, 715 F.3d 165, 174 (6th Cir. 2013).  "When suing an individual actor . . . for constitutional violations under § 1983, a plaintiff must demonstrate that the actor 'directly participated' in the alleged misconduct, at least by encouraging, implicitly authorizing, approving or knowingly acquiescing in the misconduct, if not carrying it out himself."  *Id*. "To prove acquiescence, it is not

enough to show that the actor merely failed to act against misconduct of which he was aware." *Id*.

CCS contracted with Macomb County to provide medical services to jail inmates, a traditional state function.  Therefore, it is subject to liability under § 1983 in the same way a municipality is subject to liability.  *Winkler v. Madison Cty.,* 893 F.3d 877, 904 (6th Cir. 2018).  Municipalities cannot be held liable under § 1983 solely for the acts of their agents; they are accountable under that statute for their own conduct.  *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978).  "When suing a municipality . . . for constitutional violations under § 1983, a plaintiff must prove that the deprivation occurred pursuant to a municipal 'policy or custom.' " *Flagg*, 715 F.3d at 174.  "A plaintiff must show a direct causal link between the custom and the constitutional deprivation; that is, she must show that the particular injury was incurred because of the execution of that policy." *Baynes v. Cleland*, 799 F.3d 600, 620 (6th Cir. 2015) (quotation marks and citation omitted).  "To show the existence of a municipal policy or custom leading to the alleged violation, a plaintiff can identify: (1) the municipality's legislative enactments or official policies; (2) actions taken by officials with final decision-making authority; (3) a policy of inadequate training or supervision; or (4) a custom of tolerance of acquiescence of federal violations." *Id*.

"If no constitutional violation by the individual defendants is established, the municipal defendants cannot be held liable under § 1983." *Watkins v. City of Battle Creek*, 273 F.3d 682, 687 (6th Cir. 2001).

## 2. Application

Though moving for summary judgment based on a genuine issue of material fact, the defendants argue that Derrick has failed to make allegations in his complaint that would satisfy the *Monell* requirements for municipal liability against CCS. They further argue that Derrick will be unable to show the existence of a policy, practice, procedure, or protocol on the part of CCS that resulted in a violation of Derrick's constitutional rights. In response, Derrick faults CCS for failing to provide his medical records or documentation and states that there is no documentation of a daily cleaning of his CPAP machine, because CCS did not provide for such cleaning.

Though the record shows that Derrick's CPAP machine was not cleaned by CCS on a daily basis, Derrick has not shown that a daily CPAP cleaning was required for its function, that CCS was responsible for its cleaning, or that this was due to a policy, custom, or practice of CCS. The record reflects that Derrick was advised by Nurse Warner that the method of cleaning he requested for his CPAP machine was inappropriate and would damage the machine, and that she instructed him on how he could clean the machine himself. (*Id*., PageID.250-251; ECF No.

20

28-3, PageID.220-222).  Derrick has not connected Nurse Warner's actions to a CCS policy or custom, nor has he shown that Nurse Warner's refusal to sterilize his machine in the manner he requested was unconstitutional.

As to the refusal to provide medical records, this is not a constitutional violation, and there can be no cognizable harm for this action because Derrick was provided with his medical records as they were attached to defendants' motion.  He thus had the medical evidence that he had requested in his possession before responding to their motion.  Despite this, Derrick has not cited to any evidence that would show how CCS is liable for his treatment while in custody.

Finally, Derrick fails to show that CCS was directly or indirectly responsible for the malfunction of his CPAP machine in December 2019, and the record reflects that he was unwilling to sign the release that was required in order for him to obtain a new machine while in custody.  He was released from custody a month later.  He has not shown that his lack of a CPAP machine while he remained in custody for less than a month resulted in a substantial risk of serious harm.

## V.  Conclusion

Accordingly, for the reasons stated above, the undersigned recommends that defendants' motion for summary judgment (ECF No. 28) be **GRANTED**, and that Derrick's motion for summary judgment (ECF No. 42) be **DENIED**.

Dated: January 15, 2021          s/Kimberly G. Altman
Detroit, Michigan                 KIMBERLY G. ALTMAN
                              United States Magistrate Judge

## NOTICE TO PARTIES REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation.  Any objections must be filed within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140, 144 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Under Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections,

22

in the same order, and labeled as "Response to Objection No. 1," "Response to

Objection No. 2," etc.  If the Court determines that any objections are without

merit, it may rule without awaiting the response.

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on January 15, 2021.

<div style="margin-left: auto; width: 50%;">

s/Marie E. Verlinde
MARIE E. VERLINDE
Case Manager

</div>